CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 05 2021

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK


Assigned Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

For use by inmates filing a complaint under **CIVIL RIGHTS ACT, 42 U.S.C. §1983 or BIVENS v. SIX UNKNOWN NAMED AGENTS OF FED. BUREAU OF NARCOTICS, 403 U.S.C. §388 (1971)**

Marcos F. Santiago
Plaintiff full name

55363-066
Inmate No.

v.

CIVIL ACTION NO. 721cv00436

United States of America, pursuant to
Defendant(s) full name(s)

28 USC. § 1346(b)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A. Current facility and address: USP Lee, PO Box 305, Jonesville VA 24263

B. Where did this action take place? USP Lee

C. Have you begun an action in state or federal court dealing with the same facts involved in this complaint?

_____ Yes     ✓ No

If your answer to A is Yes, answer the following:

1. Court: _____

2. Case Number: _____

D. Have you filed any grievances regarding the facts of this complaint?

✓ Yes     _____ No

1. If your answer is Yes, indicate the result:

_____

2. If your answer is No, indicate why:

E. Statement of Claim(s): State briefly the facts in this complaint. Describe what action(s) each defendant took in violation of your federal rights and include the relevant dates and places. **Do not give any legal arguments or cite any cases or statutes**. If necessary, you may attach additional page(s). Please write legibly.

Claim #1 – Supporting Facts – Briefly tell your story without citing cases or law:

Due to the extreme negligence of USP Lee B.O.P. officials, I contracted Covid-19 and suffered from difficulty breathing, chest

Claim #2 – Supporting Facts – Briefly tell your story without citing cases or law:

pains (I have heart disease), chills, lost of taste and smell, head and body aches, vomiting, etc. (see attached sworn affidavit of Marcos F. Santiago)

F. State what relief you seek from the Court. Make no legal arguments and cite no cases or statutes.

Monetary damages in the amount of $1,000,000.00

G. If this case goes to trial do you request a trial by jury?   Yes __✓__   No ____

H. If I am released or transferred, I understand it is my responsibility to immediately notify the court <u>in writing</u> of any change of address after I have been released or transferred or my case may be dismissed.

DATED: August 1, 2021   SIGNATURE: _____

VERIFICATION:

I, Marcos F. Santiago _____, state that I am the plaintiff in this action and I know the content of the above complaint, that it is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and as to those matters, I believe them to be true. I further state that I believe the factual assertations are sufficient to support a claim of violation of constitutional rights. Further, I verify that I am aware of the provisions set forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner has, on three or more occasions, while incarcerated brought an action or appeal in federal court that is dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the prisoner is imminent danger of serious physical injury. I understand that if this complaint is dismissed on any of the above grounds, I may be prohibited from filing any future actions without the pre-payment of the filing fees. I declare under penalty of perjury the foregoing to be true and correct.

DATED: August 1, 2021   SIGNATURE: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA


MARCOS F. SANTIAGO,
           Plaintiff,


v.                                    Case No._____


UNITED STATES OF AMERICA,
           Defendant


## COMPLAINT PURSUANT TO THE FEDERAL TORT CLAIM ACT


BACKGROUND


On December 29, 2020, due to the negligence of officers employed by the United States of America, all of whom are employed at United States Penitentiary Lee in Virginia, Plaintiff and hundreds of other inmates housed at USP Lee contracted covid-19; and, as a result, experienced and suffered from multiple symptoms including but not limited to, chest pains, loss of taste and smell, difficulty breathing, head and body aches, and etc. (Please see "Sworn Affidavit of Marcos F. Santiago attached hereto, which provides a detailed account of the events surrounding the matter in question.)


1

I.ANALYSIS

A. JURISDICTION AND APPLICABILITY OF THE FEDERAL TORT CLAIM ACT

The United States enjoys sovereign immunity to the extent that Congress has waived such immunity by enacting the Federal Tort Claims Act, 28 U.S.C. §2671, 36 seq. The FTCA provides in §2674 that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Jurisdiction for violations of the FTCA is governed by 28 U.S.C. § 1346 which provides in subparagraphs (b)(1) and (b)(2):

> (b)(1) [T]he district courts...shall have exlusive jurisdiction of civil actions on claims against the United States, for money damages...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or ommission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or ommission occurred. (2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or any agency, officer, or employee of the Government for mental or emotional injury suffered while in custody without a prior showing of a physical injury.

The FTCA waives the Government's traditional immunity from suit for claims based on the negligence of its employees. The Act also "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The Government cannot be sued, however, unless Congress has waived the Government's sovereign immunity and

2

authorized suit under the FTCA. <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

The FTCA's waiver of sovereign immunity is narrow and subject to a number of exceptions, with the majority codified in 28 U.S.C. § 2680, including the discretionary function exception and the intentional tort exception. If any exception set forth in 28 U.S.C. § 2680 applies in an action, the United States retains sovereign immunity, and the District Court has no subject matter jurisdiction. <u>Cohel v. United States</u>, 151 F.3d 1338, 1340 (11th Cir. 1998). Therefore, if either the discretionary function or intentional tort exception applies, the court lacks jurisdiction to hear the case. <u>Williams v. United States</u>, 50 F.3d. 299, 304-5 (4th Cir. 1995); <u>Jackson v. United States</u>, 77 F.Supp.2d 709, 713 (D.Md. 1999).

1. THE DISCRETIONARY FUNCTION EXCEPTION TO FTCA LIABILITY

The discretionary function exception is codified in subsection (a) of the statute:

> The provision of this chapter and section 1346(b) of this title shall not apply to - (a) Any claim based upon an act or ommission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. §2680.

A district Court considering whether the discretionary function exception bars an FTCA claim must determine whether: (1) the action taken involves choice by the acting government employee or a specific course was mandated by statute, regulation or policy; and (2) the choice is "of the kind that the discretionary function was

3

designed to shield." Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 1959, 100 L.EAd. 2d 531 (1988). "When established governmental policy...allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991).

Because "the United States retains its immunity for torts involving a 'discretionary function or duty' of the Government, regardless of whether or not the discretion was abused," a plaintiff cannot obtain relief for any tort alleged to have been committed by an agent who was performing such a discretionary function. Jackson, supra at 713.

Thus, the Plaintiff must establish that the Government's agents were not performing a discretionary function at the time he alleges he was injured, and that the Government was not exempt from the FTCA pursuant to subection (a).

2. THE INTENTIONAL TORT EXCEPTION TO FTCA LIABILITY

As set forth below, subsection (h) of 2680 carves out an exception for intentional torts:

> The provisions of this chapter and section 1346(b) of this title shall not apply to - (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, that, with regard to acts or ommissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purposes of this subsection, 'investigative or law enforcement officers' means any officer of the United States who is empowered

4

by law to execute searches, to seize evidence, or to make arrests for violations of Federal law. 28 U.S.C. §2680.

As is evident from this provision, the FTCA treats law enforcement officers differently. While the first portion of §2680(h) bars intentional tort claims, later in the same sentence, the statute allows a plaintiff to bring a claim against a law enforcement officer or investigator alleging: assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. In addition, this exception covers law enforcement officers and investigators as governmental actors, rather than their duties, and the Government may be held liable when law enforcement officers commit a tort outside the scope of his or her employment, even if it has nothing to do with law enforcement or investigation. See Ignacio v. United States, 674 F.3d 252, 253 (4th Cir. 2012). Therefore, under the FTCA's intentional tort exception, the United States is not liable for the intentional torts of its employees unless those acts are committed by law enforcement officers of the United States. Correctional officers are considered "law enforcement officers" pursuant to 28 U.S.C. §2680(h). See Millbrook v. United States, 569 U.S. 50, 133 S.Ct. 1441, 185 L.Ed.2d 531 (2013).

In Petitioner's FTCA claim against the United States, neither of the above-mentioned exceptions are applicable. Petitioner has not alleged, and the evidence does not show, that the United States, through its federal employees at USP Lee, intentionally caused him injury. Rather, Petitioner has argued and demonstrated through evidence, see Sworn Affidavit of Marcos F. Santiago, merely that the defendants

5

were negligent in their conduct, which caused Petitioner injury, namely, the painful symptoms that he experienced as a result of contracting covid-19.

Neither was the defendant's conduct discretionary. Conduct is not discretionary where a federal statute, regulation, or policy specifically prescribed a course of action for an employee to follow, "leaving the employee no rightful option but to adhere to the directive." Gaubert, 499 U.S. 322-23. The defendants cannot say that they were not aware of state and federal guidance concerning covid-19.

BACKGROUND OF COVID-19

In January 2020, China identified a novel coronavirus causing a pneumonia-like illness. Sui-Lee Wee and Donald G. McNeil, Jr., China Identifies New Virus Causing Pneumonialike illness, N.Y. Times (Jan. 8, 2020). Less than three months later, on March 11, 2020, the World Health Organization (WHO) declared the novel corona-virus a pandemic. The WHO "called...for countries to take urgent and aggressive action..." The WHO advised that "[a]ll countries must strike a fine balance between protecting health, minimizing economic and social disruption, and respecting human rights...This is not just a public health crisis, it is a crisis that will touch every sector -- so every sector and every individual must be involved in the fight...[C]ountries must take a whole-of-government, whole-of-society approach, built around comprehensive strategy to prevent infections, save lives and minimize impact." See WHO Director-General's opening remarks at the media briefing on COVID-19 -- 11, March 2020 (March, 11, 2020).

6

Despite the WHO's urging that all countries take swift and aggressive action to halt the spread of the novel coronavirus, it spread quickly across the United States, in the end causing the deaths of over five hundred thousand Americans.

The Centers for Disease Control and Prevent (CDC) has announced that the novel coronavirus (Covid-19) is spread primarily through in-person interactions, either "[b]etween people who are in close contact with one another" or "[t]hrough respiratory droplets produced when an infected person coughs, sneezes or talks. See CDC, How COVID-19 Spreads. It can be spread by people who are not showing symptoms and do not know they are infected with the virus. Id. The virus can travel up to thirteen feet through the air, and can live on surfaces, including shoes, for long periods of time. See Zhen-Dong Guo, et al., Aerosol and Surface Distribution of Severe Acute Respiratory Syndrome Coronavirus 2 in Hospital Wards, Wuhan China, 2020, 26 Emerging Infectious Diseases 7 (2020), https://doi. org/10.3201/eid2607.200885.

Consistent with this information, the CDC recommended that everyone practice social distancing. See CDC, How Covid-19 Spreads. Social distancing requires staying away at least six feet away from other people and "avoid[ing] large and small gatherings." See CDC, what is Social Distancing?

At the end of March 2020, the President of the United States and the CDC issued guidance intended to slow the spread of this deadly pandemic in the United States. See the President's Coronavirus

7

Guidelines for America, 30 days to Slow the Spread (March 31, 2020). The CDC and President recommended that all people avoid social gatherings of more than ten people; work and attend school from home whenever possible; avoid eating or drinking at bars, restaurants, and food courts; avoid discretionary travel, shopping or social visits; and practice good hygiene. Id. The Guidance advised "Governors of states with evidence of community transmission [to] close schools,...bars, restaurants, food courts, gyms, and other indoor and outdoor venues where groups of people congregate..." Id.

Taking the recommendations of both the WHO and CDC under consideration, the Governor of Virginia issued Executive Order 53 suspending "all public and private in person gatherings of more than 10 individuals" through June 10, 2020. The Order closed schools for the remainder of the school year and closed "all dining and congregation areas in restaurants, dining establishments, food courts, breweries, microbreweries, distileries, wineries, tasting rooms, and farmers markets..." Id. It closed "all public access recreational and entertainment businesses" including "[t]heaters, performing arts centers, concert venues, museums, and other indoor entertainment centers; [f]itness centers, gymnasiums, recreation centers, indoor sports facilities, and indoor exercise facilities; [b]eauty salons, barbershops, spas, massage parlors, tanning salons, tattoo shops...; [r]acetracks and historic horse racing facilities; and [b]owling alleys, skating rinks, arcades, amusement parks, trampoline parks, fairs, arts and craft facilities, aquariums, zoos, escape rooms, indoor shooting ranges, public and private social

8

clubs, and all other places of indoor public amusement." Id.

Executive Order 53 identified some exceptions from these restrictions. Essential retail businesses may remain open during normal business hours." Id.

The Order permits other "brick and mortar retail businesses" to remain open if they "limit all in person shopping to no more than [ten] patrons per establishment" and "adhere to...proper social distancing requirements..." Id. The Order permitted "business operations offering professional rather than retail services to remain open," but directed that "they should utilize teleworking as much as possible. Where telework was not feasible, such business[es] must adhere to social distancing recommendations, enhanced sanitization practices on common surfaces, and apply the relevant workplace guidance from state and federal authorities.

On March 30, 2020, the Governor supplemented Executive Order 53 with Executive Order 55, directing "[a]ll individuals in Virginia [to] remain at their place of residence," subject to certain exceptions. These exceptions are: "[o]btaining food, beverages, goods, or services as permitted in Executive Order 53; [s]eeking medical attention, essential social services, governmental services, assistance from law enforcement, or emergency services; [t]aking care of other individuals, animals, or visiting the home of a family member; [t]raveling required by court order to facilitate child custody, visitation, or childcare; [e]ngaging in outdoor activity, including exercise, provided individuals comply with social distancing requirements; [t]raveling to and from one's residence, place of

9

worship, or work; [t]raveling to and from an educational institution; [v]olunteering with organizations that provide charitable or social services; and [l]eaving one's residence due to a reasonable fear for health or safety, at the direction of law enforcement, or at the direction of another governmental agency." Id.

Executive Order 55 reiterated that "[a]ll public and private in-person gatherings of more than ten individuals are prohibited. This includes parties, celebrations, religious, or other social events, whether they occur indoor or outdoor. This restriction does not apply...[t]o the operation of businesses not required to close to the public under Executive Order 53; or...[t]o the gathering of family members living in the same residence." Id. "Institutions of higher education" were ordered to "cease all in-person classes and instruction, and [to] cancel all gatherings of more than ten individuals." Id. Public beaches were ordered closed, except that they may be used by individuals to exercise or fish. Id.

April 1, 2020, the Virginia State Police issued a Media Release outlining the Virginia State Police Enforcement Practice regarding the Governor's Orders. The release noted that "[t]he Virginia State Police encourages all Virginias to adhere to Virginia Governor Northam's directives and [to] do their part [to slow the spread of Covid-19] by staying home..." Id. It informed the public that "Governor Northam has directed state and local law enforcement to initially address violations of [the Governor's Orders] with education and warnings. Persistent violation...can result in an individual[] or business being charged with a class one misdemeanor,

10

which carries up to a year in jail and a $2,500 fine." Id.

The above-mentioned restrictions were binding on all Virginian residents, including even USP Lee officials who reside in the State of Virginia. Even though these tight restrictions relating to Covid-19 and designed to reduce its spread, applied at the state level, USP Lee officials, as residents of the State of Virginia, were aware of the dangers presented by Covid-19 and thus had every reason to treat these restrictions as fully binding even at their place of work. As a matter of fact, in recognition of the stark reality that Covid-19 is especially deadly for detained populations, because they are disproportionately more likely to suffer from chronic medical conditions, the Centers for Disease Control (CDC) on March 23, 2020 issued guidance for officials operating detention facilities, to help stop the spread of Covid-19. See ECF No. 2-1, Ex. 36 (CDC Interim Guidance on Management of Coronavirus Disease 2019 (Covid-19) in Correctional and Detention Facilities). The guidance includes detailed recommendations about proper hygiene and cleaning practices, social distancing (which requires staying at least six feet away from other people and avoiding large and small gatherings), evaluating symptoms, and the use of medical isolation and quarantine. The CDC guidelines provided a useful benchmark for determining whether a facility's policies and procedures are appropriate.

11

MEDICALLY VULNURABLE POPULATION

Concerning medically vulnurable populations, the CDC has made it clear that populations at higher risk for serious deleterious effects from Covid-19 are those aged 65 and older; those with such underlying medical conditions as chronic kidney disease, moderate to severe asthma, serious heart conditions (including heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension), diabetes, severe obesity, liver disease, chronic kidney disease undergoing dialysis; and the immunocompromised such as cancer patients, those who have received bone marrow or organ transplants, those who have AIDS, or those who take regularly corticosteroids and other immunosuppressants. The CDC explicitely instructed correctional facilities to develop a specific plan for the vulnurable population focused on implementing prophylactic housing and other accomodations in preparation for an outbreak. See ECF No. 36-26 at 4 ("For those patient (sic) age 60 or older, and especially those with underlying health issues, please ensure that there is a specific plan in place to isolate them from potential exposure and protect them with preventive measures"); ECF No. 2-1, Ex. 36 at 17, 21 (similar).

If USP Lee officials had a "plan in place to isolate [Petitioner, among other inmates with underlying health issues] from potential exposure and protect them with preventive measures," they failed to put it into practice. (See Petitioner's attached Sworn Affidavit.) They failed to ensure that inmates could properly practice social distancing, by allowing 70-80 inmates out for two hours of recreation

in a confined common area all at the same time. They failed to create a safe and clean environment that could reduce the spread of Covid-19 (Petitioner had to file a BP-8 and BP-9 complaint just to get workers from Facilities to unclogg the shower drains, so that inmates could take showers in stalls that were not flooded and backed up with all kinds of filth and guck). They provided very little soap and disinfectant. They failed to provide inmates with adequate medical attention, even those including myself who have underlying health issues. Or provide inmates with pain medication to help relieve their Covid-19-related symptoms. Once again, please see Petitioner's attached Sworn Affidavit, in which he details all the ways in which USP Lee officials were negligent and careless with respect to the health of inmates. In short, the CDC prescribed a course of action for USP Lee officials to follow, and they failed to comply with the CDC's guidance, and/or its directions regarding vulnurable inmate populations, that is, those with underlying health issue such as Petitioner.

The duty and care owed by the Bureau of Prisons (BOP) to federal prisoners, is governed by 18 U.S.C. § 4042, which provides in relevant part as follows:

DUTIES OF BUREAU OF PRISONS

(a) In general. The Bureau of Prisons, under the direction of the Attorney General, shall --

(2) Provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States..."

13

The BOP's duty of care for federal inmates for purposes of FTCA claims, is only one of "reasonable care" as provided by 18 U.S.C. § 4042. See Johnson v. U.S. Government, 258 F.Supp.372, 376 (E.D. Va. 1996)[Under section 4042, a prison officials duty requires only the exercise of ordinary diligence under the circumstances.]; see also "Agent Orange" Product Liability Litigation, 635 F.2d. 987, 996 (2d. Cir. 1980); Harley v. United States, No. 08-820, 2009 U.S. Dist. Lexis 5468, 2009 WL 187588 at 4 (D.S.C. Jan 26, 2009). Further, a plaintiff is required to show negligence with reasonable certainty, not through mere conject-ure. Ajaj, 479 F.Supp.2d at 549.

The question therefore is whether the defendant exercised "reasonable care" and "ordinary diligence" under the facts and circumstances presented. Clearly, as Petitioner demonstrated in his Sworn Affidavit, USP Lee officials failed in both respects.

WHEREFORE, Petitioner prays this Honorable Court to permit his tort claim to proceed to trial by jury for their determination of the amount of monetary damages that Petitioner is clearly entitled to, for his pain, sufferings, and injuries that was caused by the gross negligence and carelessness of USP Lee officials, including medical personelle.

Respectfully submitted,

Marcos F. Santiago

14

Marcos F. Santiago
55363-066
USP Lee
PO Box 305
Jonesville, VA 24263

Office
United St
210 Fr
Roanoke

Legal mail



U.S. POSTAGE PAID
FCM LG ENV
JONESVILLE, VA
24263
AUG 02 21
AMOUNT
**$0.00**
R2305K138589-01

24011

ID'd
By

OF The Clerk

ates District Court

Anklin Road, Room 540

VA 24011